the second portion of the hearing today. Um, we will take the cases up in the order in the docket and we have one submitted on the briefs. Um, that's the baker. So U. S. B. Wilson may proceed. Mr Forsythe. Yes, ma'am. I'm here. I represent the government. Okay. Mr. Tucker. Good afternoon. May it please the court. Assistant federal defender Lee Tucker for Clive Owen Wilson. I'll keep an eye on the clock and attempt to reserve three minutes for rebuttal. Your honors. Mr. Wilson asks the court to vacate his conviction and sentence because the district court, the district court's rejection of the plea agreement. Was unreasoned and an abuse of discretion. The parties reached the plea agreement, uh, through much negotiation and presented a united front to the district court with multiple reasons why the agreement should be accepted. They included the medical, uh, damage that Mr. Wilson suffered the fact that his, uh, case had been delayed because the state of Arizona wanted him to be available as a witness in one of their cases and the subsequent loss of his fast track plea. And are you saying that the district court's decision was unreasoned because he, uh, he gave those reasons like five minutes later, your honor, it was unreasoned because not only he gave reasons, I actually would argue that he gave reasons, but he did refer to having read the materials that might have given rise to reasons based to, uh, reach a certain sentencing decision. But the reasons he gave your honor in rejecting the plea agreement, he did give reasons. He gave a few reasons, but none of those reasons were related to the individual facts of the case or of Mr. Wilson. And that's the problem. So it was unreasoned. He said he did not want to have. I mean, it's not unreasoned. You just disagree with the reasons because, because it seems to be your briefs. You seem to be arguing that the fact that he didn't give the reasons right off the bat is the problem. That's actually no, your honor. And I apologize if there's a confusion in the briefing on that. No, the, the, he did. It was an unreasoned rejection because it was driven by nothing to do with the case. In fact, he said several times, he said, um, quite explicitly that he basically did not want a sentence, a stipulated sentence plea agreement brought to him. It wasn't just about this case. Well, was he saying that or was he saying he didn't want a stipulated sentence brought to him that was below the guidelines range? I'm not saying either is permissible, but I'm just trying to understand what he meant here. Exactly. Judge Bresson, that is another one of the statements he made that are concerning. So there were really three. One, he said, I don't want my hands tied to. He said that I, he, he warned the attorneys not to return to his courtroom in the future with a future case that had a similar stipulated sentencing agreement. And he said that he thought it was unacceptable because it did not encompass the applicable guideline range in criminal history category. Can I ask you a question? If we were to, I mean, obviously it's not an appropriate practice to just take the position that you're going to reject all plea agreements across the board. But if we were to remand this case, reverse and remand this case, couldn't Judge Roberti just sentence your client to the same sentence again? Your Honor, if we were remanded first, we think that Mr. Wilson, I only answered the question about sentencing, but we do think he should be returned to the same position in terms of going before the court with the plea agreement still in place and for the court to then having had an opportunity to be fully educated as to the proper procedure. I think Judge Wardlaw is asking, you know, you could do that and then it would go to Judge Liberti and he could get this exact plea agreement and say, I believe this plea agreement is unreasonable because it's too low. And I think the glaucoma situation, while very unfortunate, doesn't justify a lower sentence that the parties reach. So I'm going to reject the plea agreement and essentially give the individualized consideration. The judge could do that, but if the court's suggestion is that this is harmless and therefore because that might happen. I'm not suggesting that. I understand the value of ensuring that the court follows the proper sentencing procedures and is consistent, acts consistently with those procedures. I'm just saying, I guess as a practical matter, well, is Judge Liberti still rejecting all sentence bargain plea agreements? So unfortunately, Your Honor, I don't have data on that. I don't know. He was quite new to the bench at the time. So... Kat, did you read the judge's reasoning to reject all Rule 11, I forget the subsection, pleas? I read it as saying that this glaucoma situation, while tragic, should have been submitted as a variance and is not a basis for a stipulated plea. Why is that not an individualized assessment? Well, Your Honor, number one, it came after the fact, and I don't think that's just a pro for, I don't think that's just a formal difference. He did make statements about why he was rejecting it that didn't have anything to do with that. Second, because other factors were presented to him having to do with the plea agreement, which he did not address. That's within his discretion, though. If he wants to weigh that the glaucoma situation wasn't enough to justify a stipulated plea, I don't see how that is an abusive discretion. It's not an abusive discretion to consider that factor. The record is at best unclear that that factor or any other factor tethered to the particularities of this case were the driving reasons for him to reject the plea. And, in fact, his repetition of his annoyance and his admonition to the attorneys not to bring such agreements to him in the future indicate that it was a larger, more categorical concern, not one related to this particular case. He certainly could have said everything, Judge Bumate, that you've just suggested as reasons leading toward a conclusion that it was his decision to reject the plea agreement. But that's not what happened here. Is your client still in the United States? He is, Your Honor. He's on supervised release. Also, in case there was any confusion, he was released to the street after finishing his time and then after a long period of time in immigration detention, during which he appealed the order of removal. He lost that appeal but was released to the street. And to be honest, it's not clear. I think we in the government assume it was because Arizona still may want him to testify, but it's been quite unclear. But did he serve the 15-month sentence, or he was released before that sentence? He completed his incarceration time. So if this were remanded, the relief he would hope to get would be a lesser sentence from the district court, including a lesser sentence of supervised release or no supervised release. I will. Yes, Your Honor. Yes, why don't we hear from Mr. Forsythe. Thank you. Thank you. Good afternoon. May it please the Court. My name is Thomas Forsythe. I represent the United States in this matter. The district court did not abuse its discretion by rejecting the plea agreement between the defendant and the government in this case. Though not unbounded, Rule 11 gives district courts broad discretion in determining whether to accept or reject a plea agreement. Right. Counsel, we have a case called Morgan v. District Court. And there we said, well, Miller left open the question of whether a district court may adopt categorical rules to reject sentence bargains. An en banc panel of this court recently held that a district court acts within its discretion when it rejects a sentence bargain after an individualized analysis of the specific circumstances presented. It doesn't seem that this district court judge performed an individualized analysis of the specific circumstances and then rejected the sentence bargain. And I feel that this is controlling precedent, obviously. So how do you escape Morgan? We don't, and I believe that the court complied with Morgan, Your Honor. The court did not categorically reject the plea agreement, this stipulated plea or stipulated cap. But the district court rejected this plea because of the individual facts of this case, which is evident from the very beginning of the sentencing hearing when the court addressed the government's motion for a downward departure based on the defendant's eyesight. And the district court was more specific later in the hearing, saying that it did not believe the defendant's glaucoma situation was a sufficient basis for a below guideline sentencing cap. The Morgan court did say that a court properly exercises its discretion when it rejects a plea agreement calling for a sentence it believes is too lenient or otherwise not in the public interest in light of the factual circumstances specific to the case. And the pre-sentence report in this case calculated the defendant's guideline sentencing range as being 15 to 21 months and recommended a midterms. I have a question. The district court said that, you know, at the end of his giving his reasons for rejecting, he said perhaps you'll consider that next time you have someone who is assigned to this court. That does sound like some sort of categorical rule. Doesn't that violate Morgan? Well, Your Honor, I think if we were to take that in a vacuum and that was the only statement on the record, then I think that that would be a different question. But the court was clear in saying, quote, I felt that the plea agreement should have encompassed the sentencing range for this offense level and this criminal history category. And so I think that is the best example that the district court was tuned in to what the specifics were in this particular matter and rejected this plea agreement because, as Morgan, quoting Ellis, indicated, is permissible when the court finds a plea agreement is too lenient. But would it be permissible under Morgan for a district court to say, I will not accept plea agreements that are below guidelines? I don't believe that would be acceptable if that was the only statement made, if there was absolutely no discussion of the facts of a particular case at all, and the court was to say in every single case involving a stipulated under guideline, below guideline cap or sentence or stipulation, that would be impermissible. Counsel, what do you think? How do you I mean, were you the trial attorney here as well? Yes, Your Honor. So how did you interpret it? Perhaps you'll consider that next time you have someone who is assigned to this court. If I were a practicing attorney and the judge said that, I would take that the way it appears that Mr. Reeves took it, where he said, may we speak to that? That's a novel approach. And then the court said, careful with your words, an approach that's not normally taken. It's not normally taken because it's not a permissible approach to 11C. I understand that the judge may reject those. I was a district court judge. I get the judge can reject those. But he needs to articulate legitimate reasons, and it can't just be that he doesn't. I'm not quite sure what he didn't like. He said he didn't like having his hands tied. He doesn't really tie his hands because if he gives legitimate reasons, he can actually reject it. But that's what he said. Well, Your Honor, there is other case law in which courts in this circuit have indicated, we'll say, a distaste for certain types of pleas, a category of certain types of pleas. But once the court has made that individual assessment, individualized assessment of the facts of a particular case, then that is what overcomes the very low hurdle in terms of establishing that the court was within its discretion in rejecting that type of plea. So I think that we have a case for that. I'm sorry. Can I ask you, when Mr. Reed said that is a novel approach and the court said, careful with your words, what was the court concerned about? Why can't counsel say that's a novel approach? I'm not following some of this. Your Honor, I can't speak for the judge and his intent behind that statement. What I can speak to is what is in the record, what is in the transcript of the record from that hearing. But in terms of what the court's motivation was behind particular statements, I just can't speak to that. All right. I'm sorry. I think Judge Bumate had a question. Yeah. You mentioned that you said that our court has approved of district courts expressing a distaste for certain category cases, but as long as they give an individualized assessment, that's okay. What case are you citing for that proposition? It's an unpublished case. It is United States v. Villalobos-Rios. Oh, okay. Citation 671. I have that one. Okay. Did Mr. Wilson serve the full 15 months? I believe he served the full term. That may have included some credit. It certainly included credit for pretrial or pre-sentence incarceration. There may have been some other credits from good behavior or whatever else BOP decided to award him. But he did serve the full term of his sentence in incarceration. Was he then turned over into immigration custody after that? That is my understanding. My understanding is that he went to immigration. I don't know how long he stayed in immigration detention. As opposing counsel indicated, he has been returned to the streets and remains out of custody to this day. Mr. Forsythe, are you aware or not of whether Judge Liberti is still not accepting a rule 11c sentencing, please? Your Honor, I don't know the status of all of his case file or case load. I have not heard that that is his practice. Okay. I'm just curious. I'm wondering. And would the government oppose a resentencing to alter the terms of the supervised release? Well, Your Honor, I believe that in this particular case, that supervised release term was warranted. I don't believe, as the conversation was earlier, in terms of remand, it's very possible that Judge Liberti would make the exact same findings. And in this particular case, that the statements the defendant made on the record during the sentencing hearing, as well as the content of the pre-sentence report, certainly justified the imposition of supervised release. The defendant told the court that he had came back to the United States multiple times because people in Jamaica had tried to kill him many times. That's why he can't stay there. He said, they try to kill me every way. I cannot stay there, Your Honor. I keep coming back, Your Honor. He also referred to his four children, four of his six children, who are U.S. citizens and said, they're all I've got. And so in light of those particular statements, the district court certainly was justified in its concern that the defendant would return. There was a need for deterrence. Moreover, that PSR included a significant number of factors that the pre-sentence report writer pointed to. And as a general principle, this court has said in U.S. v. Cardi that a lengthy explanation from the bench as to why a district court imposed a specific sentence is ideal, but an adequate explanation in some cases may be inferred from the PSR or the record as a whole. And in this particular case, the PSR indicated the defendant had been deported six times since 1993. This was his fourth immigration conviction. He had prior criminal conduct that involved violence and drugs, and he had strong ties with the United States because of his family, as well as statements he had made to the PSR writer about having fearing returning to his home country of Jamaica, saying, I keep coming back. And the PSR specifically noted that the defendant's strong ties to the U.S., his fear of residing in his home country, increased his risk of reoffending, and that prior sentences have not deterred his returns to the United States. I see that my time is up. If there are no other questions, the government submits that there was no abuse of discretion in rejecting the plea agreement or in imposing this term of supervised release, and the government submits. Thank you, Mr. Borsak. Ms. Tucker? Thank you, Your Honor. Yes, briefly, thank you. I'd like to start by responding to the government's contention that Villalobos-Rios supports their position. It doesn't. As discussed on page 13 of the reply brief, Villalobos-Rios was one of several cases cited by the government. All of which, however, were distinct from our case because they all did involve the judge making reasoned statements about the cause for the rejection. And a preference for progressive sentences has been widely accepted by this court as a permissible factor. Also, I would just like to emphasize what Judge Bress said. You know, the hypothetical, if a judge said, I will never accept a plea agreement below the guideline range. That is certainly what it looks like this judge was saying, reading the transcript and particularly taking that into account, together with the very severe admonition to counsel not to return with a similar agreement in the future. At best, it's very unclear, but I think it's even a stretch to say that it's unclear. It was inappropriate. What's the categorical rule that you think the judge imposed here? I think the judge imposed a categorical rule that he would not entertain stipulated sentencing agreements where that stipulated sentence was below the applicable guideline range. And finally, I just wanted to mention in terms of supervised release, although the government now says there were all these reasons for supervised release, I'd point out at the hearing there was no discussion of this, and the government did not argue any specific reasons for imposing supervised release or why this might be a non-mine run case of a deportable defendant. In fact, the government merely said that it was standard practice when the district court asked. The government said, well, I believe it is standard practice in this district, which it is, unfortunately, and this is one of the few cases where we've seen the issue preserved, and we would like the court to find that that was an error by the district court as well. Thank you very much, unless there are further questions. Anyone have further questions? Thank you very much. U.S. Justice Wilson will be submitted.
judges: WARDLAW, BRESS, BUMATAY